UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LORD PAULIN,

                Plaintiff,                        **MEMORANDUM OPINION**
v.                                                     **AND ORDER**

TOWN OF NEW WINDSOR, P.O. F. PIERRI;        18-CV-06182 (PMH)
and P.O. B. LEVY, individually and in their
official capacities,

                Defendants.
----------------------------------------------------------X

PHILIP M. HALPERN, United States District Judge:

Plaintiff Lord Paulin ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, commenced this action on July 5, 2018. (Doc. 2, "Compl."). Plaintiff asserts claims for relief against police officers F. Pierri ("Officer Pierri"), and B. Levy ("Officer Levy" and collectively "Defendants" or the "Officers").[1] Plaintiff's claims, brought pursuant to 42 U.S.C. § 1983, are related to Plaintiff's June 30, 2017 arrest and assert that Defendants (1) used excessive force, (2) were deliberately indifferent to Plaintiff's medical needs,[2] and (3) conducted an unlawful search and seizure.[3]

---

[1] The Town of Windsor Police Department was also named as a party in Plaintiff's Complaint. On August 8, 2018, the Court directed that the Clerk of Court amend the case caption and replace the Town of Windsor Police Department with the Town of Windsor. (Doc. 6). Thereafter, on October 4, 2019, Plaintiff indicated to the Court that he did not wish to pursue claims against the Town of Windsor Police Department and the Court directed the Clerk of Court to terminate Town of Windsor from this action. (Doc. 46).

[2] Plaintiff's Complaint also asserted a state law negligence claim. (Compl. ¶ 7). During an October 4, 2019 Court conference before Judge Briccetti, Plaintiff stated that he did not file a Notice of Claim. (Doc. 46). Thus, Judge Briccetti dismissed Plaintiff's state law negligence claim. (*Id.*).

[3] Plaintiff's Complaint does not enumerate an unlawful search and seizure claim for relief. However, during Plaintiff's deposition he indicated that he intended to assert a claim that he suffered an unconstitutional search and seizure in violation of his Fourth Amendment rights. (Doc. 52-3 at 43:18-20). Therefore, given Plaintiff's testimony, his *pro se* status, and the Court's obligation to interpret the pleadings of a *pro se* plaintiff liberally "to raise the strongest arguments that they suggest," the Court construes Plaintiff's Complaint as asserting a Fourth Amendment violation claim for relief. *See McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

By motion dated December 4, 2019, Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 47; Doc. 53, "Defs. Br."). Defendants provided Plaintiff notice, pursuant to Local Civil Rule 56.2, that they were moving for summary judgment. (Doc. 48). Plaintiff was granted three extensions of time to file his opposition to Defendants' motion (Docs. 58, 61, 63), and, on July 16, 2020, Plaintiff filed an affidavit in opposition to Defendants' summary judgment motion (Doc. 65, "Pl. Aff.").[4] On July 29, 2020, Defendants filed their reply (Doc. 66, "Defs. Reply").

For the reasons that follow, Defendants' motion is GRANTED.

## BACKGROUND

The facts, as recited below, are taken from Defendants' Local Rule 56.1 statement (Dkt. 51, "56.1 Stmt."), Plaintiff's Complaint, Plaintiff's affidavit in opposition to Defendants' motion, and the admissible evidence submitted by Defendants.

The events giving rise to this dispute occurred at Jacqueline Marisco's ("Ms. Marisco") residence (the "Apartment") on June 30, 2017. (56.1 Stmt. ¶¶ 2-3). Ms. Marisco is Plaintiff's ex-girlfriend. (*Id*. ¶ 2). On June 30, 2017, the Officers responded to Ms. Marisco's Apartment at approximately 3:54 p.m. for an ongoing property removal. (*Id.* ¶ 6 (citing Doc. 52, Affirmation of

---

[4] Plaintiff did not submit a Rule 56.1 statement. While "*pro se* litigants are [] not excused from meeting the requirements of Local Rule 56.1. . . where a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009). Here, Plaintiff's affidavit, which totals four pages, does not cite to any evidence and Plaintiff did not submit a single piece of evidence in opposition to Defendants' motion. Conclusory statements contained in Plaintiff's affidavit do not constitute opposition to Defendants' Rule 56.1 statement. *See Woods v. Acampora*, No. 08-CV-4854, 2009 WL 1835881, at *3 (S.D.N.Y. June 24, 2009) ("[A] *pro se* party's 'bald assertion' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." (quoting *Odom v. Keane*, No. 95-CV-9941, 1997 WL 576088, at *3 (S.D.N.Y. Sept. 17, 1997))). Because Plaintiff failed to respond to Defendants' Rule 56.1 statement, "the well supported factual allegations set forth in [D]efendants' Rule 56.1 statement are deemed admitted." *Jones v. Lamont*, No. 05-CV-8126, 2008 WL 2152130, at *1 (S.D.N.Y. May 22, 2008), *aff'd*, 379 F. App'x 58 (2d Cir. 2010).

Robert M. Miele, "Miele Aff." Ex. D, "Incident Report" at 1)). The Officers are police officers employed by the Town of Windsor. (*Id.* ¶ 1 (citing Miele Aff. Ex. A, "Compl." ¶¶ 4-5)). When Officer Pierri arrived at Ms. Marisco's Apartment, Officer Pierri stated to Plaintiff that he was there to assist Ms. Marisco's brother-in-law, Kristopher Aadahl ("Mr. Aadahl"), remove certain of Ms. Marisco's belongings from the Apartment. (*Id.* ¶ 9 (citing Miele Aff. Ex. C, "Pl. Dep." at 13:21-14:10)). When Mr. Aadahl arrived, he, Plaintiff, and the Officers went into the Apartment to gather Ms. Marisco's belongings. (*Id.* ¶ 11 (citing Pl. Dep. 14:11-15:11)). Plaintiff did not object to the Officers entering the apartment and did not ask the Officers to leave once they had entered the apartment. (*Id.* ¶¶ 12-13 (citing Miele Aff. Ex. J, "Suppression Hr'g Tr." at 10:23-11:24)). While inside the Apartment, the Officers observed "small glassine envelopes commonly used to package narcotics on a stereo in plain view." (*Id.* ¶ 15 (citing Incident Report at 2; Suppression Hr'g Tr. At 65:15-19)). The Officers also observed, in plain view, a plastic shopping bag "containing an off white powdery substance [they] believed to be illegal narcotics." (*Id.* ¶ 17 (citing Incident Report at 2; Suppression Hr'g Tr. at 67:11-15)). The Officers requested that additional police units respond to the Apartment since a further drug investigation was expected. (*Id.* ¶ 19 (citing Suppression Hr'g Tr. at 68:14-22)). Plaintiff, who had been outside when the Officers observed the suspected contraband, reentered the apartment, grabbed the bag containing the powdery substance that the Officers had observed, and was told by the Officers to put the bag down. (*Id.* ¶¶ 21-22 (citing Pl. Dep. 17:15-16; Suppression Hr'g Tr. at 43:4-13)). The Officers informed Plaintiff that they suspected the bag contained narcotics and that Plaintiff was going to be put under arrest. (*Id.* ¶ 24 (citing Suppression Hr'g Tr. 15:18-20)). A physical struggle then ensued during which the Officers tried to handcuff Plaintiff and Plaintiff resisted arrest by flailing his arms and striking Officer Levy in the face. (*Id.* ¶¶ 25-27 (citing Suppression Hr'g Tr. at 15:20-

22, 16:10-13, 43:23-25)). During the struggle, Officer Levy felt a knife in Plaintiff's pocket (*id.* ¶ 28 (citing Suppression Hr'g Tr. at 8-9)), and Officer Pierri deployed his taser first striking Plaintiff in his stomach and waist (*id.* ¶¶ 31-32 (citing Incident Report at 2)) and then striking Plaintiff in his leg (*id*. ¶ 33 (citing Incident Report at 2)). Plaintiff was eventually handcuffed, placed under arrest, and taken into custody. (*Id.* ¶¶ 35-36 (citing Suppression Hr'g Tr. at 16:14-18; Pl. Dep. at 31:11-18)). During a search incident to Plaintiff's arrest, the Officers found cocaine in Plaintiff's pocket as well as a knife. (*Id.* ¶ 37 (citing Pl. Dep. 25:24-26:3; Suppression Hr'g Tr. at 17:4-21)). Plaintiff alleges that during the struggle the Officers punched him multiple times and he was choke slammed. (Compl. ¶ 17).

After the search, Plaintiff claims that he asked for an ambulance "probably six or seven times," but that unidentified officers denied his request. (56.1 Stmt. ¶¶ 38-39 (citing Pl. Dep. at 27:2-12)). Plaintiff was transported to the New Windsor Police Headquarters, and upon arrival, an Arrest Medical Report was completed. (*Id*. ¶¶ 40-41). The Arrest Medical Report notes that Plaintiff was asked if he had "any acute illness or injury which requires care or for which [he has] been receiving care" to which Plaintiff responded no. (*Id.* ¶ 41 (citing Miele Aff. Ex. Z "Arrest Medical Report")).

A search warrant was authorized for the Apartment based on, *inter alia*, the Officers observations of suspected contraband at the Apartment. (*Id*. ¶¶ 42-44 (citing Miele Aff. Ex. K, "Search Warrant"). The Search Warrant was executed on June 30, 2017 at 7:45 p.m. and during the search, officers found four glassine envelopes containing heroin. (*Id.* ¶ 46 (citing Pl. Dep. at 26:12-16; Miele Aff. Ex. M)).

After the search, Plaintiff was charged with assault in the second degree in violation of N.Y. Penal Law § 120.05(3), obstructing governmental administration in the second degree in

4

violation of N.Y. Penal Law § 195.05, resisting arrest in violation of N.Y. Penal Law § 205.30, criminal possession of a controlled substance in the fifth degree in violation of N.Y. Penal Law § 220.06(5), and criminal possession of a controlled substance in the seventh degree in violation of N.Y. Penal Law § 220.03. (*Id.* ¶ 47 (citing Incident Report at 3; Miele Aff. Ex. E)).

On July 1, 2017, when Plaintiff was transferred to the Orange County Sheriff's Office, he "complained of general pain from being tased and pain above his right eye." (*Id.* ¶ 50 (citing Incident Report at 3)). The New Windsor Volunteer Ambulance Corp transported Plaintiff to St. Luke's Hospital (the "Hospital"). (*Id.* ¶ 51 (citing Incident Report at 3)). Plaintiff was given "Tylenol or Motrin" at the Hospital as well as an ice pack, but he did not receive any other medical treatment. (*Id.* ¶ 53 (citing Pl. Dep. at 41:21-42:8)). The hospital records from July 1, 2017 indicate that Plaintiff was cleared for discharge less that twenty minutes after his arrival at the Hospital. (*Id.* ¶ 54 (citing Miele Aff. Ex. AA "Hospital Records" at 1, 8)).[5] The hospital records also indicate that Plaintiff complained of "wrist pain and right eye twitching." (*Id.* ¶ 57 (citing Hospital Records at 11)). The physician's assistant that treated Plaintiff noted "no eye twitching," but did identify a "possible site of being tazed" on Plaintiff's skin. (*Id.* ¶¶ 58-59 (citing Hospital Records at 12)). No testing or other treatment was directed. (*Id.* ¶ 60).

On August 10, 2017, a Grand Jury filed a six-count indictment against Plaintiff, including two counts related to Plaintiff's possession of heroin that was recovered from the Apartment pursuant to the Search Warrant. (*Id.* ¶¶ 62-63 (citing Miele Aff. Ex. N; Miele Aff. Ex. Y)). On December 21, 2017, Plaintiff pled guilty to attempted criminal possession of a controlled substance in the third degree in violation of N.Y. Penal Law §§ 110 and 220.16(1) and resisting arrest in violation of N.Y. Penal Law § 205.30. (*Id.* ¶ 69 (citing Miele Aff. Ex. R, "Plea Tr." at 13:5-22)).

---

[5] The Hospital Records do not have consistent page numbering. Thus, the Court identifies the Hospital Records by the page numbers assigned by ECF.

Plaintiff admitted under oath that on or about June 30, 2017 "[he] did knowingly and unlawfully possess . . . heroin . . . with the intent to sell it" and "[he] did, in fact, intentionally prevent or attempt to prevent that police officer from effecting an arrest[] of [him]" (*Id*. ¶¶ 70-71 (citing Plea Tr. at 17:2-7, 18:2-20)). Plaintiff also admitted that his arrest on June 30, 2017 "was an authorized arrest because the officer had observed that [he] had constructive possession of a narcotic drug." (*Id.* ¶ 72 (citing Plea Tr. 18:21-24)). Plaintiff was ultimately sentenced to one year on the resisting arrest charge and seven years on the criminal possession of a controlled substance charge. (*Id.* ¶ 78 (citing Miele Aff. Ex. T at 6:12-7:1)). Plaintiff's conviction and sentence have not been reversed on appeal, expunged, or declared invalid and Plaintiff has not been issued a writ of habeas corpus. (*Id.* ¶ 79).

## **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.,* 625 F.3d 54, 60 (2d Cir. 2010)). The task is material issue spotting,

not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. Simply put, movant must establish that the law favors the judgment sought. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with

respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim.").

## ANALYSIS

Plaintiff asserts claims for relief pursuant to 42 U.S.C. § 1983 for excessive force, deliberate indifference to medical needs, and unlawful search and seizure. The Court finds that the substantial proof offered by Defendants overwhelmingly establishes that Defendants are entitled to summary judgment. Plaintiff's three claims for relief are analyzed seriatim.

### I. Excessive Force

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness standard.'" *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). To determine whether an officer's force is objectively reasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *Graham*, 490 U.S. at 396). The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Graham*, 490 U.S. at 396). Where a Plaintiff resists arrest, the "force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *McMillan v. City of New York*, No. 10-CV-2296, 2011 WL 6129627, at *5 (S.D.N.Y. Dec. 9, 2011) (quoting *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000)). The Court is mindful that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal citations and quotations omitted).

Here, Plaintiff resisted arrest by flailing his arms and striking Officer Levy in the face. (56.1 Stmt. ¶¶ 26-30, 34). During the course of the struggle between Plaintiff and the Officers, Officer Levy felt a knife in Plaintiff's pocket. (*Id.* ¶ 28). The Officers then employed a taser twice, first striking Plaintiff in his upper stomach and waist and then striking Plaintiff in his leg. (*Id.* ¶¶ 31-33). Plaintiff was then handcuffed. (*Id.* ¶ 35). Plaintiff alleges that during the struggle Officer Levy punched him several times and choke slammed him to the ground. (Compl. ¶ 17).

It is undisputed that Plaintiff resisted arrest as Plaintiff admitted under oath that "[he] did, in fact, intentionally prevent or attempt to prevent that police officer from effecting an arrest[] of [him]." (Plea Tr. at 18:11-20). The record also establishes that Plaintiff had a knife in his pocket during the struggle. (56.1 Stmt. ¶ 37). Where a plaintiff resists arrest "[s]ome use of force . . . [is] clearly justified." *Pierre-Antoine v. City of New York.*, No. 04-CV-6987, 2006 WL 1292076, at *4 (S.D.N.Y. May 9, 2006); *see also Sullivan*, 225 F.3d at 165–66 ("The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force"). The question the Court must address at the summary judgment stage is whether the Officer's use of force was objectively reasonable. *Williams v. City of New York.*, No. 05-CV-10230, 2007 WL 2214390, at *6 (S.D.N.Y. July 26, 2007) ("Summary judgment is inappropriate on claims of excessive force 'when there are facts in dispute that are material to a determination of reasonableness.'" (quoting *Kerman v. City of New York*, 261 F.3d 229, 240 (2d Cir. 2001))). The Court finds that there is no issue of fact regarding whether the force utilized by the Officers was objectively reasonable. Faced with an individual resisting arrest and carrying a knife, with illegal drugs present and in plain view, the force utilized by the Officers was objectively reasonable. *See, e.g., Penree by Penree v. City of Utica*, 694 F. App'x 30, 33 (2d Cir. 2017) ("Our precedents suggest that it is *not* excessive force to deploy tasers, after a warning,

against arrestees who are dangerous or resisting arrest."); *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 129 (2d Cir. 2009) (finding that a punch "causing no injury to a suspect who is resisting being put in handcuffs does not rise to the level of excessive force.").

Additionally, the severity of Plaintiff's injuries do not rise to the level of a constitutional excessive force violation. Allegations of *de minimis* injuries are insufficient to trigger the protections afforded by the Fourth Amendment. *Williams*, 2007 WL 2214390, at *11 ("[W]here plaintiff's injuries are *de minimis*, the claim of excessive force cannot rise to the level of a constitutional violation as a matter of law."). While it is undisputed that the Officers used a taser on Plaintiff, there is no evidence in the record that Plaintiff suffered injuries as a result of the use of the taser or any other alleged use of force by the officers. On June 30, 2017, when Plaintiff was taken to the New Windsor Police Headquarters immediately following the struggle with the Officers, an Arrest Medical Report form was completed and Plaintiff indicated he did not have any "injur[ies] which require[ed] care." (56.1 Stmt. ¶ 41 (citing Arrest Medical Report)). The next day, July 1, 2017, Plaintiff was taken to the Hospital for an examination. The only injuries Plaintiff complained of when admitted to the Hospital were "wrist injury/pain" and "right eye twitching." (Hospital Records at 2, 10). A review of the Hospital Records demonstrates that Plaintiff had "no eye twitching." (*Id*. at 12). Furthermore, while the physician's assistant who examined Plaintiff identified a "possible site of being tazed" on Plaintiff's skin (*id.*), no other injuries were recorded, no tests were ordered, and Plaintiff was discharged after less than twenty minutes (*see generally id*.). The only treatment Plaintiff received was "Motrin or Tylenol for pain" and a direction to "ice for 20 min intervals [several] times daily." (*Id.* at 8). The evidence in the record does not support Plaintiff's conclusory allegations that he was punched and choke slammed on June 30, 2017. The evidence offered establishes that Plaintiff suffered no more than *de minimis* injuries as a result of

the Officers' conduct. "Where an arrestee suffers *de minimis* injuries, summary judgment [on an excessive force claim] is appropriate." *Smith v. City of New York*, No. 04-CV-3286, 2010 WL 3397683, at *10 (S.D.N.Y. Aug. 27, 2010), *aff'd sub nom. Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013). Thus, because the Officers' use of force was objectively reasonable and Plaintiff's injuries were *de minimis*, Plaintiff's excessive force claim is dismissed.

Even assuming *arguendo* that the Court determined there were issues of material fact regarding whether the Officers used excessive force, the Court would nonetheless find that the Officers are protected by qualified immunity. An officer is protected by qualified immunity and thus shielded from § 1983 liability "if either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable [for them] to believe that their acts did not violate these clearly established rights." *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010) (quoting *Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010)). Where a plaintiff resists arrest, "[s]ome use of force . . . [is] clearly justified." *Pierre-Antoine*, 2006 WL 1292076, at * 4. Here, Plaintiff admits that he was resisting arrest. (Plea Tr. at 18:11-20). Clearly established Second Circuit precedent holds "that it is *not* excessive force to deploy tasers . . . against arrestees who are . . . resisting arrest." *Penree*, 694 F. App'x at 33. The Officers did not violate clearly established rights of which a reasonable person would have known. Thus, the officers are shielded by qualified immunity. Accordingly, Plaintiff's excessive force claim is dismissed.

## II. <u>Deliberate Indifference to Medical Needs</u>

Plaintiff alleges that his constitutional rights were violated because he received inadequate medical care after the June 30, 2017 incident. Specifically, Plaintiff alleges that as a result of the Officers' conduct, he suffered "head contusions, lacerations, and burns from the taser prongs" and

11

that he "plead [sic] for medical attention but was denied." (Compl. ¶ 21). Plaintiff admits that he was later transferred to the Hospital where he received treatment. (*Id.* ¶ 23).

A pretrial detainee can state a claim for deliberate indifference to medical needs pursuant to § 1983 under the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). "To state a deliberate indifference claim under the Fourteenth Amendment, plaintiff's allegations must satisfy two prongs: an objective prong and a *mens rea* prong." *King v. Falco*, No. 16-CV-6315, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018). Under the first prong, the inmate's medical needs must be objectively "serious." *See Flemming v. Velardi*, No. 02-CV-4133, 2003 WL 21756108, at *2 (S.D.N.Y. July 30, 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To determine whether an inmate's medical needs are sufficiently serious, courts consider "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 701–02 (2d Cir. 1998) (internal quotations omitted).

Under the second prong, "the facts must give rise to an inference that the persons charged with providing medical care knew of those serious medical needs and intentionally disregarded them." *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000). A plaintiff can demonstrate deliberate indifference by alleging facts that demonstrate that a defendant "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Chance*, 143 F.3d at 702 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff's deliberate indifference claim fails at the objective prong stage as the record demonstrates that Plaintiff did not have a sufficiently serious injury to trigger constitutional protections. A medical condition is considered sufficiently serious if the condition is one of

12

urgency "that may result in 'degeneration' or 'extreme pain.'" *Chance*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). The only injuries Plaintiff complained of when examined at the hospital on July 1, 2017 were "wrist injury/pain" and "right eye twitching." (Hospital Records at 2, 10). The allegations in Plaintiff's Complaint that he had more serious injuries including head contusions, lacerations, and burns are not supported by the record. The Hospital notes do not indicate that Plaintiff had any injuries when he was observed on July 1, 2017 and the only treatment Plaintiff received was Tylenol or Motrin and an instruction to use an ice pack. (*Id*. at 8). Simply stated, Plaintiff's injuries were not serious and thus, to the extent Plaintiff's minor injuries went untreated, any lapse in treatment does not implicate the protections of the Fourteenth Amendment. Plaintiff's deliberate indifference to medical needs claim is dismissed.

Additionally, and separately dispositive, Defendants were not involved in the medical care Plaintiff received. In order to state a cognizable claim under § 1983, the complaint must contain specific allegations of "personal involvement of defendants in [the] alleged constitutional deprivations." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)); *see also Santiago v. Meinsen*, 89 F. Supp. 2d 435, 442 (S.D.N.Y. 2000) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under 42 U.S.C. § 1983."). Here, Plaintiff alleges that subsequent to his arrest, Defendants "den[ied] the Plaintiff medical attention" (Compl. ¶ 20) and that Plaintiff asked unidentified officers for an ambulance "probably six or seven times" prior to and while being transported to the police station. (Pl. Dep. at 27:2-12). The record does not support Plaintiff's allegations. Both Defendants testified that Plaintiff did not ask them to be taken to the hospital (Doc. 50, Affidavit of Brian Levy, "Levy Aff." ¶ 7; Doc. 55, Affidavit of Francis Pierri, "Pierri Aff." ¶ 10) and that they were not the officers who transported Plaintiff to the police station

13

after his arrest (Levy Aff. ¶ 6, Pierri Aff. ¶ 9). At the police station, Plaintiff claims that he "ple[d] for medical attention but was denied." (Compl. ¶ 22). Plaintiff does not assert that Defendants were involved in this alleged denial of medical care, and there is no evidence that Defendants were involved in the medical care Plaintiff received at the Hospital. The record establishes that even if the evidence supported Plaintiff's claim that he was denied adequate medical care, Defendants were not personally involved in such a denial. Thus, Plaintiff has failed to demonstrate that Defendants were personally involved in any deprivation in medical treatment and Plaintiff's deliberate indifference claim is dismissed.

### III.   Unlawful Search and Seizure

While not enumerated as a claim for relief in Plaintiff's Complaint, Plaintiff indicated at his deposition that he intended to assert a claim for an unlawful search and seizure. (Pl. Dep. at 43:18-20). Because the Court is obligated to interpret a *pro se* Plaintiff's Complaint liberally "to raise the strongest arguments that they suggest," the Court construes Plaintiff's Complaint as asserting a Fourth Amendment violation claim for relief. *See McPherson*, 174 F.3d at 280 (quoting *Burgos*, 14 F.3d at 790). Defendants argue that Plaintiff's unlawful search and seizure claim is foreclosed by the *Heck* doctrine. The Court agrees.

The *Heck* Doctrine provides that a Plaintiff asserting § 1983 claims can only "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" if "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Poventud v. City of New York*, 750 F.3d 121, 129–30 (2d Cir. 2014) (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)). "The *Heck* rule only applies,

however, in situations where establishing the basis for the damages claim *necessarily demonstrates* the invalidity of the conviction." *Clayton v. City of Poughkeepsie*, No. 06-CV-4881, 2007 WL 2154196, at *3 (S.D.N.Y. June 21, 2007) (citing *Heck*, 512, U.S. at 481-82) (internal quotations omitted). The question the Court must answer "is whether 'victory for the prisoner[] [would] necessarily [result in] immediate release or a shorter period of incarceration." *McKithen v. Brown*, 481 F.3d 89, 102 (2d Cir. 2007) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 80 (2005)). If so, the *Heck* doctrine applies.

The sole allegation in Plaintiff 's Complaint that could even liberally be construed as asserting an unreasonable search and seizure claim is that Plaintiff left his apartment to assist Mr. Aadahl remove belongings from the Apartment and upon returning to the Apartment "noticed the Defendants . . . rummaging through his personal belongings on the mantle in the living room." (Compl. ¶ 15). Plaintiff's Affidavit submitted in opposition to Defendants' motion, argues that Defendants "did not have reasonable cause to believe narcotics would be found in [the] apartment absent a sworn police report complaint that this plaintiff or other's [sic] sold any narcotics at this residence." (Pl. Aff. ¶ 2). Plaintiff further argues that Defendants "illegally enter[ed] the apartment without reasonable cause to do so," the suspected contraband was not in plain view, and the "baggie containing what appeared to be a large amount of a [sic] 'Off White' powdery substance . . . could have contained anything, i.e. Baby Powder, Powdered Sugar, or even Rat Poison." (*Id*.). Therefore, Plaintiff argues that search was illegal and violated his "constitutional rights to be free of illegal search and seizure." (*Id*.).

Plaintiff ultimately pled guilty to attempted criminal possession of a controlled substance in the third degree in violation of N.Y. Penal Law §§ 110 and 220.16(1) based on the narcotics found at the Apartment, and admitted under oath that on or about June 30, 2017 "[he] did

knowingly and unlawfully possess . . . heroin . . . with the intent to sell it." (Plea Tr. at 13:5-22)). Plaintiff further admitted that his arrest on June 30, 2017 "was an authorized arrest because the officer had observed that [he] had constructive possession of a narcotic drug." (*Id.* ¶ 72 (citing Plea Tr. 18:21-24)). Plaintiff's claim for relief asserting that he was subject to an unreasonable search and seizure is plainly barred by *Heck* because "success on plaintiff's [§] 1983 claim that the search was unlawful would necessarily imply the invalidity of his conviction." *See Monroe v. Gould*, 372 F. Supp. 3d 197, 203 (S.D.N.Y. 2019) (finding "plaintiff's claim concerning the search which led to the discovery of cocaine is barred by *Heck*."); *see also Davis v. Klein*, No. 11-CV-4868, 2013 WL 5780475, at *3 (E.D.N.Y. Oct. 25, 2013) ("It is undisputed that Davis pled guilty . . . Plaintiff has not shown, nor is there any reason to believe he could, that this conviction has been reversed on appeal, called into question by a federal court's issuance of a writ of habeas corpus, or otherwise invalidated in any other way. The unassailed conviction slams the courthouse door on this claim." (citing *Heck*, 512 U.S. 486-87)). Were Plaintiff to prevail on his unlawful search and seizure claim it would necessarily demonstrate that the predicate for his arrest and conviction—the Officer's discovery of narcotics in the Apartment—was unlawful. Plaintiff's conviction and sentence have not been reversed on appeal, expunged, or declared invalid and Plaintiff has not been issued a writ of habeas corpus. (56.1 Stmt. ¶ 79). Because '"victory for [Plaintiff would] necessarily [result in] immediate release or a shorter period of incarceration," *McKithen*, 481 F.3d at 102, Plaintiff's unlawful search and seizure claim is barred by the *Heck* Doctrine and is dismissed.

## **CONCLUSION**

Based on the foregoing, Defendants' motion to dismiss is GRANTED. The Clerk is respectfully instructed to mail a copy of this Memorandum Opinion and Order to Plaintiff at the address provided on the docket, terminate the pending motion (Doc. 47), and close this case.

**SO ORDERED:**

Dated: New York, New York
      October 5, 2020

_____
Philip M. Halpern
United States District Judge